[Civ. No. 1980.   Third Appellate District.—May 27, 1919.]

## PASQUALE   PELUSO,   Respondent,   v.   CITY   TAXI COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE — ACTION FOR DAMAGES FOR DEATH — EVIDENCE — FINDINGS.—In this action to recover damages for the death of a minor through having been run into by a taxi driven by an employee of the defendant, the evidence abundantly supported the finding that the defendant was palpably negligent and that there was no contributing negligence on the part of the minor.

[2] ID.—DAMAGES—WHEN MAY BE SET ASIDE AS EXCESSIVE.—To set aside a verdict in an action for damages for the death of a minor on the ground that the judgment is excessive, the excess must appear as a matter of law, or the facts must be such as to suggest at first blush passion, prejudice, or corruption on the part of the jury.

[3] ID.—DEATH OF MINOR—DAMAGES RECOVERABLE.—In an action for damages for the death of a minor, recovery is not limited to his earning capacity during minority, but includes the present value of the reasonable benefit which the parents would probably have received after his majority and during the period of their common expectancy of life.

[4] ID.—CASE AT BAR—DAMAGES NOT EXCESSIVE.—Where the deceased was a boy of the age of fifteen years, strong and healthy, and working regularly in a boiler-making shop receiving forty-five or fifty dollars a month, all of which earnings were given to his parents, it cannot be said that a verdict of three thousand five hundred dollars was excessive.

[5] ID. — INCOMPLETE INSTRUCTION — REMEDY.—Where an instruction does not contain a misdirection to the jury, but rather an incomplete direction, the appellant is in no position to complain if he does not ask for a more specific and explicit instruction.

[6] ID.—PROBABLE FUTURE EARNINGS—CONSIDERATION BY JURY.—In an action for damages for the death of a minor, it is proper for the jury, in awarding damages, to consider the probable future benefits that would have accrued to the father from the services of the minor in case the accident had not occurred.

2. What is excessive verdict in action for death by wrongful act, notes, Ann. Cas. 1915C, 449; 18 Ann. Cas. 1209.

3. Measure of damages recoverable by parent for death of minor child by wrongful act, notes, Ann. Cas. 1916B, 532; Ann. Cas. 1912C, 58.

3. Measure of damages recoverable in behalf of estate of an infant for his wrongful death, note, 7 A. L. R. 1340.

6. Character and sufficiency of evidence to show pecuniary loss to parents by death of child, note, L. R. A. 1918E, 278.

[7] Id.—Expectation of Life—Judicial Notice.—The courts take judicial notice as to the expectation of life.

[8] Id.—Action Against Corporation and Stockholders—Dismissal as to Stockholders.—In an action against a corporation and its stockholders for damages for the death of a minor through the negligence of the defendant corporation, the latter is not injured by the dismissal of the action as to the stockholders.

[9] Id.—Pleading—Use of Words "Carelessly and Negligently."—In an action for damages for the death of a minor through the alleged negligence of the defendant taxi company, it is proper for the court to refuse to strike out the words "carelessly and negligently" in the complaint, wherein they appear in the sentence, "The defendant, . . . carelessly and negligently drove an automobile," etc., and, also, "then and there so carelessly and negligently managed said automobile," etc.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. A. Gett for Appellant.

A. M. Seymour, Sheridan Downey and Hyman Zagoren for Respondent.

BURNETT, J.—This action was brought to recover damages for the death of a minor son, and the verdict and judgment were in favor of plaintiff for the sum of three thousand five hundred dollars.

[1] The evidence abundantly supports the finding that appellant's negligence was the proximate cause of the death of the minor. Indeed, we rarely have a case wherein such affirmation can be made with equal assurance. The overwhelming weight of the evidence shows that the minor was riding slowly on a bicycle on the proper side of Eighth Street, in Sacramento. A taxi driven by an employee of appellant came from behind going in the same direction and traveling at a high rate of speed. No signal was given by the driver to warn the boy of the approach of the taxi, and when the machine was within a few feet of the bicycle, the driver swung it to the wrong side, trying to pass to the right of the bicycle and thereby causing a collision, which resulted in the almost instant death of the minor.

Several disinterested witnesses testified substantially to the foregoing facts. Of these we may quote Mrs. Mary Silva as follows: "Well, as we was going down Eighth Street, my attention was directed to a boy on a bicycle, and he was just coming along, and all of a sudden I heard a terrible noise, just a buzz, and I noticed it was a taxicab, and I noticed them about the—just a little ways past the car-track in the intersection on P. Street line, just four or five feet maybe, something like that, and the taxi was just coming at such speed that it swerved between the boy on the bicycle and the curbing, and the left of the automobile struck the hind end of the bicycle and threw the boy some distance from the bike and he landed on his head." She further testified that the automobile was traveling "at least thirty miles per hour," the boy on the bicycle not more than "seven or eight miles per hour," and that she did not hear any signal given and that the deceased "was coming straight." The testimony of the witnesses for the plaintiff, it may be added, shows that the boy was exercising ordinary care, that he was where he had a right to be and he had no opportunity to escape the danger, if he really had any apprehension of it. The principles of law applicable to such a situation are plain, have often been stated by this and other courts, and they need no repetition. As we are required to view the facts, it must be said that appellant was palpably negligent, that there was no contributory negligence on the part of said minor, and that appellant is legally responsible for the accident.

[2] It can be said with equal confidence that the verdict is not so large as to be properly characterized as excessive. In fact, under the circumstances the amount seems to be quite reasonable, and it can be properly said that the jury manifested a degree of moderation and justice that is not always shown in such cases. To set the verdict aside upon this ground, the excess must appear as a matter of law, or "the facts must be such as to suggest at first blush passion, prejudice, or corruption on the part of the jury." (*Bond* v. *United Railroads,* 159 Cal. 270, [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366]; *Slaughter* v. *Goldberg, Bowen & Co.,* 26 Cal. App. 318, [147 Pac. 90].) Nothing of this kind appears in the case at bar. The boy was fifteen years of age, strong and healthy, was working

regularly in the boiler-making shop of the Southern Pacific Company; he was receiving forty-five or fifty dollars a month, was the eldest of six children, and gave all of his earnings to his parents, for the support of the family. Regarding the question from a financial standpoint, which the law demands, and keeping in view the probabilities of the future if his life had run its natural course, it is reasonable to suppose °that he was worth more to his parents than the sum of three thousand five hundred dollars. [3] The recovery was not limited, of course, to the earning capacity of the son during his minority, but it included the present value of the reasonable benefit which the parents would probably have received after his majority and during the period of their common expectancy of life. (*Bond* v. *United Railroads, supra.*) [4] The boy's expectancy was about forty-five years and the father's twenty-five, the common expectancy being therefore the latter period. We think we have stated sufficient facts to indicate the moderation of the award in view of the probable deprivation of the father of the services, earnings, society, comfort, and protection of his son for so many years. In the Bond case, *supra*, the minor was of the age of twenty years and the award was for the sum of four thousand five hundred dollars, and in the Slaughter case the verdict was for ten thousand dollars, the deceased being of the age of twenty-three years at the time of the fatal accident. In neither of these cases was the verdict held to be excessive. The facts of this case disclose even less reason for setting aside the verdict as immoderate and unconscionable.

Complaint is made of the action of the court as to the instructions and particularly of the following: "The word 'damages' as used in the preceding instruction (Code Civ. Proc., sec. 377), includes pecuniary loss of every kind, which the evidence in this case established with reasonable certainty, has been suffered and will in future be suffered by this plaintiff because of the death of his son, Antonio Peluso. To arrive at the total amount of damages to be awarded you may consider not only what support plaintiff with reasonable certainty would have derived from the earnings and services of his son until he reaches twenty-one, but also, with reasonable certainty, after such age, and also

what pecuniary loss this plaintiff has suffered and will in future suffer with reasonable certainty by being deprived of the comfort, society, and protection of his said son, Antonio Peluso, not only until he reaches majority, but thereafter." Appellant claims that there are two fatal defects in the instruction; first, "nothing was said to the effect that the jury should determine whether there was a reasonable probability that the conditions as to health and earning capacity of the minor son would continue '*for some time* after he became of age,'" and, second, "nothing was said about the point that the damages were to include 'the present value of the benefits which it could reasonably be expected' the minor son 'would have bestowed upon his parents during' his 'expectancy of life,' though this element of the expectancy of life of the father was mentioned in the course of the proceedings." Another contention of appellant is, that the instruction failed to contain a caution against the allowance of compensation "for sorrow or distress" or for "a remote and conjectural pecuniary loss."

[5] The defects, however, if they may be called such, constitute "sins of omission rather than of commission." The instruction did not contain a misdirection to the jury, but rather an *incomplete* direction. In such case, an appellant is in no position to complain where he does not ask for a more specific and explicit instruction. (*Rice* v. *Whitmore*, 74 Cal. 619, at p. 624, [5 Am. St. Rep. 479, 16 Pac. 501]; *Nicol* v. *Laumeister*, 102 Cal. 658, at p. 660, [36 Pac. 925].)

We think said instruction is fairly construed as meaning that in awarding damages the jury might consider the two elements, namely, the loss that might accrue to the father during the minority of the son, and also, the loss that might be suffered by the former after the latter had reached his majority. In other words, an attempt was made to state the factors embraced in the question of damages as they are set forth in the decision of the supreme court in the Bond case, *supra*.

It is to be observed that the instruction begins with the statement: "The word 'damages' as used in the preceding instruction includes," etc. It certainly does include what was thereinafter stated. The second sentence is: "To arrive at the total amount of damages to be awarded you

may consider," etc. This is probably more objectionable than the first part, as possibly subject to the implication that the jury should award the future value of such services. But we must assume that the jurors were persons of intelligence and would know that they must make allowance for the difference in value between the present and future use and enjoyment of the same sum of money. By said instruction, the jurors were not required to award the amount of the probable future benefits that would have accrued to the father from the services of the son in case the accident had not occurred, but they were instructed that in awarding damages they might consider such benefits. [6] This it was proper for them to do, and, while the instruction is not as complete and accurate as it might be, we think it cannot be said that thereby appellant suffered any injury. In other words, a finding of the present value of said benefits as the proper verdict to award is not irreconcilable with said instructions, and under well-settled principles we must assume that the three thousand five hundred dollars represents the judgment of the jury as to the amount of said present value.

[7] As to the expectation of life, that is a matter of which the courts take judicial notice. (20 Am. & Eng. Ency. of Law, 2d ed., p. 886; *Valente* v. *Sierra Ry. Co.,* 151 Cal. 534, [91 Pac. 481].) It was, though, virtually agreed by counsel that the American table of mortality should be considered as received in evidence, as shown by this colloquy: "'Mr. Downey: . . . We wish to prove the expectancy of life of Mr. Peluso, the father, by the mortality tables. If the court takes judicial notice of that I will look it up and let the court know so that it can instruct the jury. The Court: Well, I don't know that I do. I think that would probably have to be offered. I think counsel would consent that it be admitted. Mr. Gett: No objection to that but there are three or four mortality tables; which one are they going to admit? Mr. Seymour: The American table. Mr. Downey: They are all about the same. The Court: Well, with that understanding, you submit your case?"

The court, no doubt, intended to call the attention of the jury to said table in reference to the expectancy of life as

to one of Mr. Peluso's age, but probably overlooked it. This was excusable since neither party requested such instruction. But, at any rate, how can it be said that appellant was prejudiced by such failure or omission? If the court had so instructed the jury, it would have been to tell them that Mr. Peluso would probably live twenty-five years. Is it probable that the verdict would have been reduced? It is entirely improbable that it would have affected the verdict in the least. Speaking of the probabilities, it is quite likely that the matter was fully explained, without objection, in the argument of plaintiff to the jury, and that it was carefully considered in the determination of the verdict. We cannot suppose that the able counsel would fail to elucidate the subject in the development of their view of the case, if indeed the jury needed any enlightenment upon that subject concerning which information is so accessible to all. We may add that all the instructions requested by appellant were given except one, which was a mere repetition of another.

[8] We can see no merit in appellant's complaint because the plaintiff made the stockholders codefendants and afterward dismissed the action as to them. Indeed, appellant demurred to the complaint on the ground that it was improperly joined with the other defendants in the action, and respondent seems to have reached the same conclusion and to have remedied the defect by said dismissal. At any rate, it is difficult to conceive how appellant has been injured by said action. The other defendants may eventually have to bear the loss since they are stockholders, but the primary liability is against the corporation.

[9] With equal zeal appellant complains because the court below refused to strike out the words "carelessly and negligently" in the complaint wherein they appear in the sentence, "The defendant, City Taxi Company, carelessly and negligently drove an automobile," etc., and, also, "then and there so carelessly and negligently managed said automobile," etc. The action of the court was entirely proper. The significance and character of these expressions, as used in a pleading of negligence, are fully considered in *Ellis* v. *Central California Traction Co.*, 37 Cal. App. 390, [174 Pac. 407]. But even if we were to

concede that they constitute surplusage, it would be apparent that appellant suffered no damage by the ruling of the court.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.