[No. 17999. Department One. August 30, 1923.]

O. R. DODGE *et al., Respondents,* v. LELAND SALINGER *et al., Appellants.*

EMILY PAXTON, *Respondent,* v. LELAND SALINGER *et al., Appellants.*

LORING SALINGER, *by his Guardian ad Litem Leland Salinger, Appellant,* v. O. R. DODGE *et al., Respondents.*

SETSUZO OCHI, *by his Guardian ad Litem K. Hiraudi, Appellant,* v. O. R. DODGE *et al., Respondents.*

LELAND SALINGER, *Appellant,* v. O. R. DODGE *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS (379, 383)—USE OF STREETS—MUTUAL RIGHTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE. The contributory negligence of the driver of an automobile in an intersection collision precludes any recovery, where the other car had the right of way, and had he looked to the right on entering the intersection, he could have seen the other car and could have stopped before running into it.

SAME (385)—USE OF STREETS—PERSONS LIABLE—CONCURRENT NEGLIGENCE. Where one is riding in an automobile with another as his guest, and is injured by the negligence of a third person, the contributory negligence of the driver is not imputable to the injured person.

Appeals from judgments of the superior court for King county, Askren, J., entered May 13, 1922, upon

[1] Reported in 217 Pac. 1014.

findings in separate actions for damages from a colli-
sion of automobiles, tried to the court. Affirmed in
part and reversed in part.

*Allen & Griffith,* for appellants.
*Robert F. Sandall,* for respondents.

HOLCOMB, J.—On this appeal, we are to review five
separate actions for damages arising out of a colli-
sion occurring between two automobiles, at 5:30 p. m.
on October 17, 1921, at the intersection of Federal ave-
nue and East Republican street, Seattle. These
streets were paved and dry at the time of the collision.
Federal avenue runs north and south; East Republi-
can street east and west.

Respondent Dodge was driving a Paige Sports auto-
mobile, weighing 3,350 pounds, containing three adults
and one infant; himself, his wife and infant, and his
wife's mother, Mrs. Paxton. He was driving west
approaching Federal avenue. He had no curtains on
his car. The other car was a Studebaker, weighing
2,885 pounds, the occupants of which were Loring Sal-
inger, a nineteen-year-old boy, son of Leland Salinger,
the owner of the car, and five other boys near the
age of Loring Salinger, among them one Ochi, a
Japanese boy eighteen years of age, a guest, riding
in the rear seat. The Salinger car was approaching
East Republican street from the north.

As usual, the controversy is waged over the difficult
questions of which car was being driven at an unlaw-
ful rate of speed; which car was at or in the inter-
section first, and which car had the right of way, and
the alleged contributory negligence of each driver.

The traffic ordinances of Seattle thought to apply to
the situation were alleged and admitted.

The occupants of the Paige car, traveling west on East Republican street, testified positively that their car was being driven at the rate of fifteen miles per hour down a 11.3 per cent grade, under compression, between the street intersections at Federal avenue and the street to the east; that they were in the street intersection and two-thirds of the way across before they saw the other car coming from the north in a straight line towards them at, as Mrs. Paxton said, "a terrific rate." She said she first saw the Studebaker car when it was two car lengths away, and shouted to her son-in-law at almost the instant of the collision. Dodge testified that he was at least two-thirds of the way across the street intersection when they were struck; that he was on the right-hand side of the street and driving across the street intersection at about twelve miles per hour.

On the other hand, the occupants of the Studebaker car testified equally positively that their car was traveling at the rate of eighteen to twenty miles per hour; that some of them saw the Paige car coming from the east down hill towards Federal avenue at the rate of from twenty to thirty miles per hour, come into the street intersection at undiminished speed, and struck them head on about the center of the street intersection north and south, or a little to the south of it.

A disinterested witness, one Randall, testified that he crossed Federal avenue just before the collision, going east on East Republican street, and saw the Paige car coming when it was about thirty feet from the east line of the street intersection; that it was traveling about six or seven feet from the curb on the right-hand side of the street and at about eighteen miles per hour. He saw the Studebaker just before

they came together. Just before the collision occurred, he heard an outcry of some kind, which he thought was from one of the women in the Paige car. When he first saw the Studebaker car, it was trying to pass the Paige car in the intersection. The Paige car had then slowed down considerably. At the time of the collision, the course of the Paige car was straight west on the right side of the street across the intersection, and the course of the Studebaker car was straight south on the right side of the street across the intersection, and that the collision occurred near the northwest corner of the intersection; thus showing that each driver was driving on the proper side of the street and that the common point where their lines of travel would intersect was where it did intersect at the moment of the collision, near the northwest corner of the street intersection. Thus, regardless of the condition and position in which the cars were immediately after the collision, and the amount of damage done to each car, it is quite evident, as the trial court believed, that the Paige car must have been in the intersection first, and was struck by the Studebaker car.

Photographs of the two cars in evidence show that the Studebaker car was very badly wrecked. It was in some manner thrown up with two wheels on the parking strip at the southwest corner of the intersection, against a telephone pole and a tree. The other two wheels were on the pavement outside of the curb. The two wheels on the right side of the car, on the parking strip were broken down, the other two wheels were not broken down, but the tires were stripped from them and that side of the car was badly mashed. The rear end of the car plainly shows that a violent blow occurred against the left rear fender, mashing

it and mashing the running board down. The Paige car was whirled around to the left and somewhat across the street, and stopped headed to the southwest, almost even across the street from the Studebaker car. The damage to the Paige car consisted of the radiator and front end of the car being bent and pushed to the left so that the radiator was even with the steering wheel, and the fender on the left side was mashed and bent and pushed upward.

Although the nature of the injuries to the cars alone cannot determine who was at fault, so many things depending on the weight and momentum of the different cars, the speed at which they were traveling, and the ground on which they were traveling and moved after the collision occurred, yet the nature of the injuries to these cars show that the Paige (respondent's car) ran into the other.

As to the speed of the cars, the trial judge had the witnesses before him and was able to judge of their demeanor, and we are unable to say that the evidence preponderates against the finding of the trial court that the Salinger boy was traveling at a high rate of speed, approached and entered the intersection at a high rate of speed, and was thus negligent. The trial court, however, found and concluded that Dodge, the driver of the Paige car, was not negligent, because the testimony in his behalf was that he approached the intersection at not to exceed fifteen miles per hour, and slowed up to twelve miles per hour at the east side of the intersection, and that he looked to the right, or north, up Federal avenue at a point approximately forty feet from the east side of the intersection where he could see up Federal avenue a distance of 140 or 150 feet, and saw no car approaching the intersection from that direction; that he then turned his attention

to the left, or east side of Federal avenue, which he was then approaching, for any car coming from that direction; that he was two-thirds of the way across the intersection before his car was struck.

But the trial court undoubtedly lost sight of the fact that Dodge testified that, after he looked at the place approximately forty feet from the east side of the intersection, he did not look again to the right. He was a very fair and frank witness, and we are impressed with his honesty, but the fact that he testified repeatedly and unequivocally that he did not look to the right after looking at the place about forty feet east of the intersection, is against him. True, he says he turned his attention to the left, where he would first encounter a car in the intersection coming from the south, and that that side of the street was obstructed by a house and shrubbery, making it necessary to continue looking that way until he almost reached the curb on the east side. A photograph which he introduced in evidence showing that corner of the intersection, shows no house on that corner near enough to obstruct the view for a distance of eighty to one hundred feet to the left, counting the width of the street on which he was traveling. While there are some trees and shrubbery there, the street to the south of East Republican street, to his left, can be plainly seen at several interspaces for some little distance. A tree near the corner of the parking strip on the southeast corner which has limbs six or eight feet from the ground, even with its foliage on in October, would not obstruct the view of an automobile driver sitting in his car, to any great extent; and to the left of it, the east side of Federal avenue is quite plainly visible for a distance of sixty to eighty feet. It was manifestly unnecessary for respondent to devote his

attention continually to the left approach to the street intersection until he reached the east edge thereof. He testified that he saw no car when he looked about forty feet from the east side of the street intersection, and that there was then no car within 150 feet of it. This is probably true. On the other hand, when he got to the east edge of the intersection, there being nothing to obstruct his view to the south to observe the approach of cars from that direction, he was at liberty to look to the north and see if there were any cars on the right side of Federal avenue approaching the intersection from that direction, which he did not do. He testified that, if he had, he would have seen the other car, "as it was undoubtedly there." If it "was there," he did not have the right of way. The ordinance, with which he was familiar, but bound by it in any event, required him to look for vehicles approaching the street intersection simultaneously from the right, as such car would have the right of way. He had a distance of nearly forty feet to travel after reaching the east side of the street intersection before reaching the point where the line of travel of the two cars would intersect.

He also testified that his car, which was fifteen feet and six inches long, traveling at the rate of twelve miles an hour, under compression, had he seen anything requiring him to stop quickly by applying his brakes, could have been stopped within its length, fifteen feet six inches. Therefore, had he looked when entering the east side of the street intersection, he must unavoidably have seen the Studebaker car approaching from the north in time to have stopped his car and avoided the collision.

We are trying this case upon the facts as shown by the record, *de novo*.

While we shall not attempt to say, or lay down a rule as a matter of law, at what distance respondent should have looked for another car approaching the street intersection, the law does not hold one blameless who does not take precautions at such a place and time as would have prevented injury to him. The evidence shows that respondent could have stopped his car before running into the other car, after entering the street intersection, and that his car crashed into the other car. Such being the facts, we cannot hold respondent blameless.

These facts distinguish this case also from *MacDonald v. Seattle, ante* p. 1, 217 Pac. 39.

There can be no doubt, therefore, that the negligence of respondent contributed to and concurred in the cause of the collision. That being true, respondent is not entitled to recover.

The above result renders it necessary to pass upon the case of Ochi, the Japanese boy, who was traveling as a guest in the Salinger car, and was badly injured. He suffered a broken collar bone, broken shoulder, and broken arm at the elbow, and other physical injuries. His elbow is partially stiff, and will never be usable in the normal way. He suffered great pain for a considerable period. He has incurred medical and hospital bills which had accrued at the time of the trial to the amount of $902, and further medical bills will be necessary.

"The rule adopted by this court, and the one sustained by the weight of authority, is to the effect that, where one is riding in a vehicle with another as his guest or companion and is injured by the negligence of a third person, the contributory negligence of the driver is not imputable to the injured person unless the latter, at the time of the injury, was in a position to exercise authority or control over the driver."

*Allen v. Walla Walla Valley R. Co.,* 96 Wash. 397, 165 Pac. 99, and cases there cited.

From our previous discussion, it will be seen that, although it is determined that Salinger, whose guest Ochi was, was negligent, the negligence of Dodge also having been established, each and both of them would be liable for the negligence which concurred in and occasioned the injury to Ochi. This we have many times held. *Thoresen v. St. Paul & Tacoma Lumber Co.,* 73 Wash. 99, 131 Pac. 645, 132 Pac. 860; *Jaquith v. Worden,* 73 Wash. 349, 132 Pac. 33, 48 L. R. A. (N. S.) 827; *Hellan v. Supply Laundry Co.,* 94 Wash. 683, 163 Pac. 9; *Ross v. Smith & Bloxom,* 107 Wash. 493, 182 Pac. 582; *Anderson v. McLaren,* 114 Wash. 33, 194 Pac. 828; *Norris v. Hadfield,* 124 Wash. 198, 213 Pac. 934, 216 Pac. 846.

The trial court having held that Salinger, the driver of the car in which Ochi was a guest, was wholly negligent, and Dodge, the driver of the other car free from negligence, of course dismissed the action of Ochi, and refused to make findings in his favor as to the amount of his recovery.

Under the evidence, however, we are able to find the amount Ochi should recover, since he is entitled to recover against Dodge and Mrs. Paxton, whom he sued. While Ochi's elbow is partially stiff and cannot be moved in some directions normally, the evidence is that he will be able to do some kinds of work, including clerical work, and is not totally incapacitated. He was eighteen years of age at the time of his injury. While no exact standard can be established for the amount of compensation in such cases, we are of the opinion that the sum of fifteen hundred dollars, in addition to the $902 medical and hospital expenses, amounting to $2,402, is the sum he should recover.

The judgments in favor of Dodge and wife and Mrs. Paxton against Salinger and wife, are therefore reversed, and it is ordered that they recover nothing. The judgments dismissing the actions of Salinger and wife against Dodge and Paxton are affirmed.

The judgment dismissing the action of Ochi against Dodge and Paxton is reversed, and it is ordered that Ochi recover of and from Dodge and Paxton the sum of $2,402 and his costs.

MAIN, C. J., BRIDGES, and MACKINTOSH, JJ., concur.