[No. 19662. Department One. April 9, 1926.]

JOHN NAGEL, *by his Guardian ad Litem Michael Nagel, Respondent,* v. MICHAEL McDERMOTT, *Appellant.*[1]

[1] NEGLIGENCE (23)—IMPUTED NEGLIGENCE—PASSENGER ON BICYCLE. The contributory negligence of a boy, operating a bicycle, is not to be imputed to another boy, riding on the handle bars, where the latter was merely taken along for company upon an errand of the operator, and they were not engaged in a common enterprise.

[2] MUNICIPAL CORPORATIONS (379, 392) — MUTUAL RIGHTS AS TO CROSSING—REQUESTED INSTRUCTIONS. The driver of a car who did not go around the center of the street intersection in making the turn is not entitled to an instruction making legal refinements as to what constituted such center.

[3] NEGLIGENCE (23)—IMPUTED NEGLIGENCE—DUTY OF PASSENGER—INSTRUCTIONS. Where the negligence of a boy, operating a

[1]Reported in 244 Pac. 977.

bicycle, was not to be imputed to another, riding on the handle bars, it is sufficient to give an instruction as to the duty of the latter to give warning of any danger which he saw or should have seen.

[4] WITNESSES (78)—CROSS-EXAMINATION—LIMITATION TO SUBJECT OF DIRECT EXAMINATION. A witness to a collision may not be cross-examined as to the speed of the vehicles, where she had given no direct evidence on the subject.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered April 15, 1925, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained in a collision between an automobile and a bicycle. Affirmed.

*Poe, Falknor, Falknor & Emory* and *Williams & Davis,* for appellant.

*Sliger & Kaune,* for respondent.

HOLCOMB, J.—The minor respondent recovered judgment against appellant in the lower court for damages sustained in a collision between an automobile, owned and operated by appellant, and a bicycle owned and operated by a boy named Hampton. The jury awarded damages in the sum of eight hundred dollars, which, after timely motions for directed verdict, for judgment n. o. v., and for a new trial, had been denied, was confirmed by the trial court by entering judgment in that sum.

An intelligent determination of the errors assigned by appellant requires a somewhat full statement of the facts which went to the jury, favorable to respondent.

On a Sunday afternoon, September 14, 1924, Myron Hampton, a boy fourteen years of age, was at the house of Michael Nagel with his bicycle. Nagel's grown daughter asked Myron to go to a store near the east end of Everett avenue in Everett and purchase some

walnuts for her, giving him the money therefor. John Nagel, ten years of age was invited by Myron to accompany him on the errand. The boys walked from Nagel's house to Walnut street, which was paved, then mounted the bicycle and rode south on Walnut street to a gas station on the northeast corner of Walnut street and Everett avenue, where they stopped and put air in a tire. They left the gas station by a side entrance on Everett avenue, about sixty feet east of the northeast corner of Walnut street and Everett avenue. They rode out onto the twenty-foot paved strip extending midway between the curbs on Everett avenue, Myron being seated on the seat, holding the handle bars and controlling the bicycle. The smaller boy, who it seems was even small for his age, rode on the cross-bar extending between the saddle-post and the handle bars, with his feet to the left. The cross-bar on which he was riding was five or six inches below the level of the seat on which Myron sat, and John's riding in no wise obstructed the view of Myron.

Paralleling Walnut street, Chestnut street intersects Everett avenue one block east of Walnut. The distance from the east line of Walnut street to the east line of Chestnut street is two hundred and sixty feet, and there is a descending grade of about 3.6 per cent between Walnut street and Chestnut. On each side of the twenty-foot paved strip in the center of Everett Avenue is a twenty-four foot unpaved strip extending to the curb. Chestnut street is fifty-two feet between curbs, south of Everett, and thirty-six feet between curbs north of Everett avenue, and is paved the full width between curbs south of the Everett avenue paving strip and unpaved north of the Everett avenue paving strip.

Myron's bicycle was equipped with what is called a coaster brake, which operates by pushing backwards

on the pedals. If the rider pedals forward, power is thus applied to propel, or accelerate the speed of the bicycle; if he press backwards on the pedals of the bicycle the brakes are applied; while if the pedals are held motionless in a neutral position, the bicycle coasts. After going out upon the Everett avenue paving, Myron pedaled about one-half the distance down to Chestnut street, and then coasted on down to the intersection of Everett avenue and Chestnut street, as he stated at a speed of about ten miles per hour, to the place where the collision occurred.

There is positive testimony, both by themselves and another, that the collision occurred while the bicycle was actually on the southern half of the Everett avenue paved strip, or where it had the right to be. There was also evidence by another witness, not so positive, but tending to the same effect. Two parallel curved rows of bricks formerly abutting against street car tracks which had been removed, and about three and a half feet apart, extend from Chestnut street into Everett avenue, near the southeast corner of the intersection, and turn east on Everett avenue. These rows of bricks run almost exactly midway between the *center* of the intersection and the southeast curb corner. There was positive testimony on behalf of respondent that appellant's car, in turning off from Everett avenue south into Chestnut street, followed the brick-rows with the left wheel of the car between the rows of bricks, and very near the east row. Appellant and a companion riding with him in the car and who testified at the trial, admitted that appellant's car followed close to these brick-rows, but with the left wheel over to the west of the west row.

The evidence is conflicting as to whether appellant held out his hand, in approaching the intersection to go south on Chestnut street, to indicate his intention.

He testified that he did; other witnesses testified that he did not, and they looked to see whether he would or did give a signal. A report made and signed by appellant at the police station, about thirty minutes after the collision, stated that the speed at which appellant was traveling upon entering the intersection and at the moment of the collision was about fifteen miles per hour. According to the testimony of respondent, the bicycle was clearly in the intersection first.

Everett avenue, where this collision took place, is a part of the Pacific Highway, and most of the traffic continues straight on up Everett avenue into Everett, only a small portion turning off Everett avenue at this intersection, which is near the eastern boundary of the city.

Respondent alleged, and produced evidence to support, that appellant was negligent, in that he violated the law of the road by attempting to pass in front of the bicycle which was at least approaching the intersection simultaneously from his right in that when he turned to his left to go south on Chestnut street the bicycle was on his right; also, negligent in not turning around the center of the intersection, which, if he had done so, would have enabled the bicycle to pass on down Everett avenue without colliding, the collision having occurred some distance east of the north and south center line of the intersection; also, negligent in suddenly turning to his left, across the path of the bicycle, without giving any warning of his intention so to do; further, that appellant was exceeding the speed limit within the intersection. (Although respondent now asserts that the speed limit as to either vehicle was not material in this case.)

The evidence also showed that the errand, on which the Hampton boy was requested to go, was requested

of him solely by the sister of the Nagel boy; that he simply asked the Nagel boy to go with him for company; that he handled the bicycle entirely and that the Nagel boy had nothing to do with its operation or control. There is evidence also that, when the Hampton boy saw the automobile of appellant coming in the opposite direction as he approached the intersection, he watched to see whether any signal would be given of a turn to the left into Walnut street, and that no signal was given; that appellant drove his car to the left into Walnut street, so as not to turn around the center of the intersection of the paved way; that he suddenly turned in front of the bicycle and when he did so, the Hampton boy was right on top of the automobile and had no time or opportunity to do anything,—did not even have time to put his foot on the brake; that his bicycle struck the automobile just to the rear of the hinges which were on the front of the door of the roadster car of appellant, something penetrated the metal of the door, and the bicycle was dragged along with the car until it was thrown down ten or twelve feet from the south line of the paved strip in Everett avenue.

[1] Appellant first insists that the trial court erred in refusing to give two instructions requested by appellant, to the effect that respondent and the Hampton boy were engaged in a common enterprise under the facts in this case, and that the negligence of one was the negligence of the other. Appellant cites and relies upon our cases of *Masterson v. Leonard,* 116 Wash. 551, 200 Pac. 320; *Hurley v. Spokane,* 126 Wash. 213, 217 Pac. 1004; *Jensen v. Chicago, Milwaukee & St. Paul R. Co.,* 133 Wash. 208, 233 Pac. 635; and *Wentworth v. Town of Waterbury,* 90 Vt. 60, 96 Atl. 334.

We see very little in common with this case in any of the cited cases. The *Masterson* case was clearly a case

where two boys were using the bicycle of one, while engaged in a common enterprise of both, at the time of the injury. The *Hurley* case was a case where a brother and sister used their father's automobile with his knowledge and consent for a common purpose of theirs. The *Jensen* case was also very different in its facts as to the common purpose of the occupants of the automobile. There, they had employed a common agent to run the automobile for them for a pleasure trip. The *Wentworth* case is probably more nearly applicable to this case, for there four parties were merely out on a pleasure trip, their purpose being to see Lake Champlain by the common use of an automobile, which was borrowed by the men for the purpose, and driven by one of them whose negligence occasioned the injury. The court in that case simply held that the plaintiff and the other man were engaged in carrying out a common purpose, that is, showing Lake Champlain to the ladies, and the negligence of one was imputable to the other.

In this case there is no such common purpose shown. The Hampton boy was going on an errand, using his own vehicle and operating it himself, for the sister of the respondent boy. He merely took respondent with him for company. They had no common purpose.

This case is essentially like that of *Allen v. Walla Walla Valley R. Co.*, 96 Wash. 397, 165 Pac. 99, where we held that the contributory negligence of the driver of a horse is not to be attributed to one riding with him in the buggy as a guest or companion, where the latter was not in position to exercise any authority or control over the driver. In that case we said:

"So that the doctrine of imputed negligence is based upon the single question of whether the occupant of the vehicle was in a position to exercise authority or control over the driver in respect to the matter in which

the driver was negligent. The basic thought upon which the doctrine or principle of imputed negligence rests is that the relationship of master and servant or principal and agent must exist between the driver and the occupant at the time of the injury. In the absence of such a relationship, the negligence of the one will not be attributed to the other." [Citing cases.]

See, also, *Dodge v. Salinger,* 126 Wash. 237, 217 Pac. 1014; *Bauer v. Tougaw,* 128 Wash. 654, 224 Pac. 20.

We are satisfied that, under the facts in this case, it is governed by the decision in the *Allen* case, *supra,* and the cases following it.

The determination that negligence cannot be imputed to the boy in this case tends to dispose of a number of the other errors assigned by appellant adversely to appellant.

An examination of the instructions given by the trial court discloses that the instructions were, on the whole, extremely favorable to appellant. The court instructed that a violation of positive law by one would be in itself negligence, and the violation by the driver of the bicycle on which respondent was riding when injured, under the ordinances of Everett, forbidding crossing street intersections on bicycles in the thickly settled parts of the city at a greater speed than six miles per hour, would be negligence, and also coasting on a bicycle in such parts of the city, preventing recovery if any such negligence of the driver of the bicycle contributed to the accident.

Even if this were true, and contributed to the injury, the negligence of the Hampton boy cannot be imputed to respondent. Both appellant and the Hampton boy might have been negligent, their concurrent negligence proximately causing the accident, and each and both separately or jointly liable. *Anderson v. McLaren,* 114 Wash. 33, 194 Pac. 828; *Dodge v. Salinger, supra.*

The court also instructed the jury that it was the duty of everyone to use his eyes and senses to protect his own safety, and if respondent was in a position where he could see the danger and warn or direct the Hampton boy in the operation of the bicycle, and failed to use that degree of care and caution with reference to his own safety that an ordinarily prudent and careful boy of his own age would have used under the circumstances and conditions surrounding him, and that such failure on his part in any manner contributed to the proximate cause of the injury then respondent could not recover, even though appellant was found to be negligent. The above instruction, however, complied with the rule announced in *Bauer v. Tougaw, supra.* As it was favorable to appellant and the jury must have found that respondent had no such opportunity to warn the operator of the bicycle, the facts must have been resolved in favor of the Hampton boy's own testimony.

[2] Assignments numbered 4 and 5, involve an instruction given and one refused on what appellant insists is the proper center of the street intersection. Counsel contend that, in this case, the center is not the actual center, but the center of that part of the intersection lying south of the north line of the paved strip in Everett avenue.

We are not disposed to make refined legal distinctions as to what the center of a street intersection is. Ordinarily, it is well known and commonly understood. In this case there was evidence that the large busses, which travel the highway on Everett avenue and turn on Walnut street, pass around the actual center of the intersection.

The instruction requested by appellant was improper in any event; for, under the evidence of appellant him-

self, in following the parallel rows of bricks in the street intersection he did not go around even the center of the paved portion of the intersection, necessarily, but cut the corner. Instructions to be appropriate, should apply to facts in the case attempted to be shown by one or the other of the parties.

[3] Appellant assigns error on the refusal of the court to give an instruction requested numbered 8, upon the theory that the bicycle operated by the Hampton boy left the Everett avenue paved strip some little distance prior to the collision, and that the actual collision occurred about twelve or fifteen feet south of the south edge of the paved strip.

We have determined that the negligence of the bicycle operator was not imputable to the respondent boy, to which effect the jury should have been instructed, instead of being plainly told that negligence of the bicycle operator was imputable to the respondent boy. As we have shown, an instruction was given by the trial court on the subject of the opportunity of the respondent boy to warn the Hampton boy of any danger which he saw or should have seen. It was not the trial court's duty to go any further than this. To have done so would have been erroneous.

Some instructions were given which, in our view of the case, were erroneous, but which, not being prejudicial to appellant, but to respondent, we are not called on to correct.

[4] Appellant complains of a restriction by the trial court of the cross-examination of a witness named Mrs. Hicks, who testified to seeing the collision, and where the bicycle stopped when it came to rest after the impact. She gave no testimony as to the speed of either vehicle. Appellant desired to cross-examine her as to how fast the boys were going at the time. Since she

had given no direct testimony as to the speed of the bicycle, cross-examination upon that subject was manifestly uncalled for. There was no abuse of discretion on the part of the trial court in denying such cross-examination.

We find no error and the judgment is affirmed.

TOLMAN, C. J., FULLERTON, MITCHELL, and MAIN, JJ., concur.