[Civ. No. 5836. Third Appellate District.—September 23, 1937.]

REED FLYNN, a Minor, etc., et al., Respondents, v.
GEORGE KUMAMOTO et al., Appellants.

Gerald M. Desmond for Appellants.

Ray T. Coughlin and Robert A. Zarick for Respondents.

PULLEN, P. J.—This appeal arises from a judgment in
favor of plaintiffs in the sum of $5,000 for personal injuries
sustained by Reed Flynn, a minor.

The facts surrounding the accident, which are not disputed,
show that appellant George Kumamoto was driving a sedan
with the permission of the owner of the car and with the con-
sent of his father and mother, who had, prior to the accident,
signed a driver's application for George Kumamoto, a minor.

The accident occurred on the night of October 20, 1935, at
about 7 o'clock in the evening. At that time, Reed Flynn,
a minor aged about 14 years, was riding a blue colored bicycle
southwesterly along the Folsom road in Sacramento County.
Upon that occasion he was accompanied by his brother

Howard Flynn, also a minor, about 15 years of age. The boys were proceeding on their way homeward. Some time prior to the accident mechanical trouble developed in the bicycle ridden by respondent, and the two bicycles were tied together with a rope, one end attached to the seat of the bicycle ridden by Howard and the other end tied to the bicycle ridden by respondent, and were separated by a distance of approximately 5 feet. At times Howard would have to pull the bicycle of Reed and at other times Reed was able to propel it himself. Both bicycles were equipped with red reflectors, although neither had headlights.

The Folsom road where the accident occurred consisted of a concrete pavement 23 feet 3 inches in width, divided in the center by a white stripe with macadam shoulders upon each side of the concrete pavement. At the time of the accident the boys were riding their bicycles upon the macadam shoulder and on the proper side of the highway. Just prior to the accident appellant was driving a sedan in a southwesterly direction on the concrete portion of the highway behind respondent.

Just before the accident appellant observed a car with bright lights approaching at a distance of approximately 200 feet, traveling two or three feet south of the white line on the center portion of the concrete pavement. After the approaching car had passed and appellant's vision was restored to normal he observed the leading bicycle about ten or fifteen feet in front of him, and almost immediately thereafter he struck respondent, who was thrown from his bicycle to the highway. As a result of the accident respondent received certain injuries, for which he was awarded the sum of $5,000 general damages, and the further sum of $160 special damages were awarded to the father for medical care and attention.

In this appeal two points are urged for reversal. One is that respondent was guilty of contributory negligence as a matter of law in riding an unlighted bicycle upon a public highway at night, and that the award of $5,000 general damages was excessive.

Section 622 of the Vehicle Code provides that ''bicycles shall be equipped with a lamp emitting a white light visible under normal atmospheric conditions from a distance of three hundred feet in front of such bicycle and with a red reflector

on the rear so designated and located as to be visible for at least two hundred feet when directly in front of a motor vehicle displaying lawful undimmed headlights, or with a rear lamp exhibiting a red light visible from a distance of two hundred feet to the rear''.

Inasmuch as the bicycles were equipped with red reflectors, which was not disputed, and were visible at a distance of 200 feet when directly in front of a motor vehicle as was established by evidence, it is immaterial in this case that such bicycles were not equipped with a headlight, as the absence of that light did not proximately contribute to the cause of the accident, the absence of such light not in any manner contributing to the accident. (*Greeneich* v. *Knoll,* 73 Cal. App. 1 [238 Pac. 163].)

The negligence on the part of defendant George Kumamoto seems to have been that although his vision was obstructed by the light of an approaching automobile, he did nothing to protect others who might be using the highway during the time that he was blinded by the bright lights of the approaching car.

Section 510 of the Vehicle Code, in existence at the time of the accident, provides: ''No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.''

The duty devolves upon the driver of an automobile upon such conditions, so to reduce the speed of his car that he can stop immediately if called upon to do so. (*Hatzakorzian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82 [239 Pac. 709, 715, 41 A. L. R. 1027].)

In *Hatzakorzian* v. *Rucker-Fuller Desk Co., supra,* it is said: ''That it is the duty of a driver of an automobile to anticipate the presence of pedestrians upon the highway over which he is thus traveling, is settled as a part of the law of the road and is emphasized in *Zarzana* v. *Neve Drug Co.,* 180 Cal. 32 [179 Pac. 203, 15 A. L. R. 401], and in *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335 [208 Pac. 125].''

In the case last above cited it is held the driver is bound to anticipate that he may meet persons at any point upon the highway, and must keep a proper lookout for them, and keep

his machine under such control as will enable him to avoid a collision, and if necessary he must slow up and stop.

In *Hatzakorzian* v. *Rucker-Fuller Desk Co., supra,* the court quoted with approval from *Meyers* v. *Bradford,* 54 Cal. App. 157 [201 Pac. 471], as follows: "It is part of the duty of the operator of a motor vehicle to keep his machine always under control so as to avoid collisions with pedestrians and other persons using the highway. He has no right to assume that the road is clear, but under all circumstances and at all times he must be vigilant and must anticipate and expect the presence of others. Accordingly, the fact that he did not know that anyone was on the highway is no excuse for the conduct which would have amounted to recklessness if he had known that another vehicle or person was on the highway."

Neither can we agree with appellant that the verdict is excessive. As expressed in 8 California Jurisprudence, page 834, "Courts are not authorized to set aside the award of damages made by the jury as excessive merely because the opinion of the judge is at variance with that of the jurors. It is only where the excess appears as a matter of law, or where the recovery is so grossly disproportionate to any compensation reasonably warranted by the facts as to shock the sense of justice and raise at once a presumption that it is the result of passion, prejudice, or corruption, rather than honest and sober judgment, that the court may exercise this power."

There is nothing in the record that indicates any bias or prejudice. The case now before us is the second time the matter has been considered by the trial court. The cause was first presented to a jury, who returned a verdict in the sum of $5,000, in which case, however, a new trial was granted because of an erroneous instruction. The present case was tried before the court sitting without a jury. That such a situation may properly be considered by a reviewing court is established in the case of *Gackstetter* v. *Market Street Ry. Co.,* 10 Cal. App. (2d) 713 [52 Pac. (2d) 998], and *Grant* v. *Los Angeles Transfer Co.,* 45 Cal. App. 731 [188 Pac. 294].

We must be influenced somewhat by the fact that the jury which awarded damages to respondent for his injuries in the first trial, and the trial judge who made the same award in

the second trial, were in a position in each instance to actually see the nature of the injuries sustained by respondent and their effect upon his general physical well-being.

Dr. Dozier, a physician of the highest standing and reputation in this community, testified that he examined Reed Flynn, the plaintiff herein, on the 7th day of November, 1935, and at that time found a lacerated wound extending from under the upper left arm down and across the arm partly to the elbow, and another wound some seven inches long also on the upper left arm. Also a cut in the midline of the head over the occiput, some three inches long. In December of the same year, plaintiff again called for a physical examination, and at that time complained of pain and swelling in the right knee. On July 8, 1936, the doctor again examined plaintiff, and found that the wounds had healed and scars had formed, both upon the arm and upon the head. He found there was approximately a ten per cent limitation on the part of plaintiff to raise his left arm perpendicularly as compared with the right because of a tightening and drawing of the transverse scar. At that time the right knee was still slightly impaired, and the limitation in the knee and in the arm had increased somewhat over what had been found upon prior examinations.

In view of this testimony that there was some limitation of action, both in the arm and in the knee, and that such limitation was permanent, and had tended somewhat to increase, all of which will constitute an impairment for a young man in many mechanical occupations, together with the disfigurement of the scars upon his body, would justify the court in awarding the damages as found in the judgment.

The judgment must theretofore be affirmed, and it is so ordered.

Plummer, J., and Thompson, J., concurred.