(No. 6697. September 20, 1940.)

JOHN MAIER and CAROLINE MAIER, Respondents, v. MINIDOKA COUNTY MOTOR COMPANY, a Corporation, and THOMAS MAST, Appellants.

[105 Pac. (2d) 1076.]

644

Chapman & Chapman, H. A. Baker and H. V. Creason, for Appellants.

S. T. Lowe and H. B. Redford, for Respondents.

BUDGE, J.—This action was brought by respondents to recover damages for the death of their 16 year old daughter, June, who died as a result of injuries suffered by her when a bicycle on which she and her cousin, Richard Maier, were riding was struck by an automobile driven by appellant Mast. There were no eye witnesses except occupants of the automobile. The collision occurred after dark October 25, 1936, on U. S. Highway No. 30 N., approximately two and one-half miles east of Rupert, and about 300 feet west of a lane leading from the highway to respondents' residence. June and Richard Maier left respondents' home by bicycle, Richard operating the bicycle and June riding on the bar between the seat and handle bars, approximately ten minutes after eight, with the intention of going to the home of Richard's brother-in-law one-half mile west and one-half

mile north. Shortly after they left, not more than five minutes, a screeching of brakes was heard by Ruth and Helmuth Maier then at respondents' house, Helmuth then ran west on the highway to the scene of the collision, found the bicycle lying on the north shoulder of the highway, the body of Richard on the north shoulder northwest of the bicycle and the body of June lying north of Richard's body. Trial resulted in a verdict for respondents in the sum of $2,665.00 and judgment was entered thereon. From this judgment and from the order of the court overruling and denying motions for new trial appellants prosecute this appeal.

While appellants' brief contains 43 assignments of error the argument thereon is limited to three general subdivisions, the first affecting those points relating to respondents' right to recover against the appellant Minidoka County Motor Company, a corporation, and the second and third relating to questions affecting the right of respondents to recover from either or both appellants, as follows:

(1) The relationship existing between the appellant Thomas Mast, and the appellant Minidoka County Motor Company, a corporation, at the time of the accident, including the question of whether the appellant Mast was acting within the scope of his employment.

(2) The sufficiency of the evidence, and

(3) The court's instructions.

It appears logical to first consider the question of the sufficiency of the evidence with relation to negligence and the related question of contributory negligence.

There is evidence that the highway near the scene of the collision and one-half mile to the east of the scene of the collision was straight and level, that the bicycle was struck from the rear, and that with the same model bicycle with like equipment after dark at the scene of the collision the rear reflector was visible from an automobile at a distance of 170 feet and that the bicycle and occupants were visible a greater distance. At the time of the collision it was bright moonlight, clear, and objects on the highway were visible. There is evidence that shortly before the collision the witness Covert saw an automobile traveling west on the highway approximately one-fourth mile east of the scene of the collision, estimated by him to have been traveling 60 to 65 miles

an hour. Shortly thereafter he heard the sound of a collision and what sounded like a siren and he immediately proceeded to the scene of the collision. While the witness was unable to specifically identify the car which had passed, he testified that he saw only one car pass. Evidence of the physical facts, which were some evidence of speed, was to the effect that the body of June Maier lay 89 feet from the point of impact, the body of Richard Maier between 80 and 85 feet from the point of impact, and the bicycle 15 to 30 feet from the point of impact. There was testimony the tires of the automobile produced skid marks on the highway surface, starting between 6 and 7 feet west, beyond, the point of impact and continuing along the surface of the road 30 or 40 feet, and that the light, bumper, fender and cowl of the automobile were bent and the shatter proof glass windshield was broken. The skull of Richard Maier was fractured and his thigh was torn or cut. The left leg of June Maier was completely torn off above the ankle. Appellant Mast testified he was blinded by the lights of approaching traffic to such an extent he could see nothing for a distance of 250 feet and that just as the front of the car with the blinding lights arrived at a point even with him, he saw the bicycle not over six feet in front of him. By his own statement it appears that Mast had ''absolutely no vision whatsoever.'' On cross-examination Mast was asked and answered as follows:

''Q. You couldn't tell whether there was anyone on the bicycle or not?

''A. I did not know whether it was a cow or horse or what it was, I knew I struck something but I didn't know what it was.

''Q. How far would be the distance between your car and the car approaching from the west, be apart when you noticed that the lights of the approaching car impaired your vision?

''A. The only way I could answer that—there would be a space there of 250 feet ordinarily that you can't see anything.''

From this testimony the jury could have concluded that appellant Mast was driving at a high rate of speed and was blinded by approaching traffic for a distance of at least

250 feet to such an extent that he could see nothing and struck the bicycle and its two occupants without having seen them or at least without being able to tell what he had seen at a point six feet from them. The jury could have concluded that although blinded for a distance of at least 250 feet appellant Mast continued to drive that distance without being able to see and until he struck the bicycle and its occupants. Generally it is negligence as a matter of law, or at least strong evidence of negligence, for a motorist to operate his automobile on a highway at such a speed that the automobile cannot be stopped within the distance within which objects can be seen ahead of the automobile. (*Goodman v. Wisby,* 152 Kan. 341, 103 Pac. (2d) 804.) This court has placed its approval upon the doctrine that one driving at nighttime must proceed at such rate of speed that he may be able ordinarily to stop short of an object appearing in the radius of his lights. (*Baldwin v. Mittry,* 61 Ida. 427, 102 Pac. (2d) 643; *Stanger v. Hunter,* 49 Ida. 723, 291 Pac. 1060. See, also, *Flynn v. Kumamoto,* 22 Cal. App. (2d) 607, 72 Pac. (2d) 248; *Hatzakorzian v. Rucker-Fuller Desk Co.,* 197 Cal. 82, 239 Pac. 709, 41 A. L. R. 1027, and annotation, p. 1040; *Meads v. Deener,* 128 Cal. App. 328, 17 Pac. (2d) 198; *Ruth v. Vroom,* 245 Mich. 88, 222 N. W. 155, 62 A. L. R. 1528, and note, p. 1531; *Mathers v. Botsford,* 86 Fla 40, 97 So. 282, 32 A. L. R. 881, and note, p. 887.)

It is appellants' apparent position that the deceased was guilty of contributory negligence, urging four main points, namely: That two people were traveling on the bicycle; that the bicycle had no headlamp, traveling at night; that the cyclists were not traveling as nearly as possible to the right-hand edge of the highway; and that respondents parents, were guilty of contributory negligence in not remaining at home and lending adult surveillance to the young people, approximately 16 years of age.

Contributory negligence, which will bar recovery is established only when it is shown that at the time of or before the injury, the person injured, was guilty of a failure to exercise ordinary care for his own protection *and that such failure was a proximate and contributing cause of the injury.* (*Tendoy v. West,* 51 Ida. 679, 9 Pac. (2d) 1026;

*Hart v. Farris,* 218 Cal. 69, 21 Pac. (2d) 432; *Landis v. Wick,* 154 Or. 199, 57 Pac. (2d) 759, 59 Pac. (2d) 403; *Pettes v. Jones,* 41 N. M. 167, 66 Pac. (2d) 967, 979; *Flynn v. Kumamoto, supra.*)

 Appellants urge in effect that traveling on the highway on a bicycle at night without a lighted headlamp as provided by statute constitutes negligence and therefore contributory negligence as a matter of law was proven. In *Tendoy v. West, supra,* this court stated:

"In the absence of some probable causal connection, bald negligence *per se* can raise no presumption of proximate cause; it may be wholly innocent. It is no more effective than any other kind of negligence. Where, on the question of proximate cause, men's minds may honestly differ, it should always be submitted to the jury. *Kelly v. Troy Laundry Co.* (46 Ida. 214, 267 Pac. 222); *Hooker v. Schuler,* 45 Ida. 83, 260 Pac. 1027; *Hall v. Hepp,* 210 App. Div. 149, 205 N. Y. Supp. 474, holding that the violation of a traffic law must be established as the proximate cause of the injury, the question being one of fact, citing *Clark v. Doolittle,* 205 App. Div. 697, 199 N. Y. Supp. 814; *Martin v. Oregon Stages,* 129 Or. 435, 277 Pac. 291, 294; asking the pertinent question, 'was the absence of a white light the approximate cause of the collision?' After declaring the plaintiff guilty of negligence *per se* for driving after sundown without a taillight the court said in *Gleason v. Lowe,* 232 Mich. 300, 205 N. W. 199, 200: 'It was a question of fact for the jury whether there was any causal connection between the statutory violation of plaintiff and the injury occasioned by defendant.' *Martin v. Carruthers,* 69 Colo. 464, 195 Pac. 105, 106, conceding plaintiff's negligence *per se* but declaring, 'There is room for two opinions under the evidence as to whether that negligence was a cause contributing to the collision.' To the same effect are *Darby v. Jarrett,* 26 Ohio App. 194, 159 N. E. 858; *Georgetti v. Wollaston,* 83 Cal. App. 358, 257 Pac. 109. But it is unnecessary to multiply authority."

The foregoing principle has been specifically applied in the case of the injury of bicyclists, holding that in order for a bicycle rider, who has no light on the front of his bicycle, to be barred from recovery against a negligent automobile

driver whose negligence is the proximate cause of the injury to the cyclist, it must appear that the failure to carry the lamp was a proximate cause of the injury. (*Hart v. Farris, supra; Landis v. Wick, supra; Flynn v. Kumamoto, supra.*)

Herein there is evidence that the bicycle was struck from the rear, that it had a reflectorized tail-light, that a like light on the same model bicycle was visible at night from an automobile at a distance of 170 feet. It likewise appears that from appellant Mast's own testimony his vision was blinded by approaching headlights so that he could see nothing for a distance of at least 250 feet and until he arrived at a point even with the approaching car, at which time, or within a distance of six feet, according to his testimony, he saw and struck the bicycle. From this testimony the jury might well have concluded that the absence of a headlamp on the bicycle had no causal connection with the collision and did not proximately contribute to the accident. The same may be said of the fact that two people were traveling on the bicycle, if such be negligence, which does not necessarily appear to be the fact, it does not appear in what manner such fact had any causal connection with the accident. With relation to proximity to the edge of the highway at which the bicycle was traveling, there is evidence disclosing that it was within 14 inches of the right-hand edge of the surfaced portion of the highway. We are unable to find anything in the law requiring a cyclist to forego the privilege of the use of the highways in conformity with the rules of the road as prescribed for all vehicles, nor does it appear that any provision of the law relating to the use of highways requires them to use only the shoulder of the road as appellants suggest. The questions of negligence and contributory negligence were properly submitted to the jury.

The witnesses John and Henry Maier testified that at the hospital, one to two and one-half hours after the collision they detected the odor of intoxicating liquor on the breath of appellant Mast. Several witnesses, testifying with relation to a period of time including the entire day preceding the collision and immediately after its occurrence, testified appellant Mast had had no intoxicating liquor during the entire day and that they detected no odor of intoxicating

liquor on his breath at the time of and immediately after the collision. Appellants urge that permitting the testimony of John and Henry Maier over their objection was error since it was too remote in point of time to establish or tend to prove that appellant Mast was under the influence of intoxicating liquor to any degree or extent at the time of the collision. In *Stuart v. McVey*, 59 Ida. 740, 87 Pac. (2d) 446, this court announced the following rule:

" . . . . There would seem to be no room for argument that evidence of the drinking of intoxicating liquors and the condition of a person with reference to intoxication is admissible upon the question of intoxication, if such evidence is not too remote in point of ·time, the fact of remoteness in point of time going rather to the weight of the evidence than to its admissibility, and evidence remote in time to the extent of eight to ten hours has been held properly admissible."

Appellants urge, however, that inasmuch as the foregoing case dealt with evidence of intoxication preceding the collision the rule announced has no application to evidence relating to intoxication at a time subsequent to the collision. It would appear however that the fact of remoteness in point of time of evidence relating to intoxication subsequent to the collision affects only the weight of the evidence, rather than its admissibility. The weight to be given testimony relating to a time subsequent to the collision depending largely in the instant case on the possibility and probability of appellant Mast having had opportunity to drink intoxicating liquor after the collision occurred. We are of the opinion the fact of remoteness herein goes to the weight of the evidence, a matter for the jury to determine, and that permitting such testimony was not prejudicially erroneous.

Under appellants' first subdivision of the argument, relating to the relationship existing between appellant Mast and appellant Minidoka County Motor Company and the question of whether appellant Mast was acting within the scope of his employment, it is appellants' position that 'it appears from the evidence as a matter of law that appellant Mast was not acting within the scope of his employment and that the Minidoka County Motor Company was not the owner of the automobile and therefore respondents could in no event recover from the Minidoka County Motor Company.

The fact that the automobile driven by Mast carried license plates, dealers' license plates 438–A, issued to appellant Minidoka County Motor Company was admitted by the pleadings and testified to by a witness for respondent. The rule appears to be well established that evidence that the automobile which caused a plaintiff's injury displayed certain license numbers, and that this number was registered in the defendant's name, makes out a *prima facie* case of ownership in defendant. The rule is stated in 6 Am. Jur. 869, sec. 661, as follows:

"The license number on a motor vehicle is *prima facie* proof of ownership thereof in the person whose name appears on the corresponding certificate of registration on file in the proper office. This presumption may, however, be rebutted by competent evidence. . . . . "

To like effect: *Henry v. Condit,* 152 Or. 348, 53 Pac. (2d) 722, 103 A. L. R. 131; annotation 103 A. L. R. 138; *Ferguson v. Reynolds,* 52 Utah, 583, 176 Pac. 267; Huddy, Automobiles, sec. 60; Davids, the Law of Motor Vehicles, sec. 40.

"Evidence that the automobile which caused the plaintiff's injuries displayed a certain license number, and that this number was registered in the office of the Secretary of State in the defendant's name as owner, makes out a *prima facie* case of ownership in the defendant." (Berry, Automobiles, 2d ed., sec. 609.)

In, *Haring v. Connell,* 244 Pa. 439, 90 Atl. 910, the only evidence of ownership was the license tag, a dealers license, and with reference thereto the court said:

"This tag was issued to and accepted by the appellees upon condition that it 'should not be used for any other purpose than testing or demonstrating the vehicle to a prospective purchaser or in removing the same from place to place for the purpose of sale. . . '. . One of these was on the car which ran into the appellant, and, as it was issued upon the express condition stated, the presumption is that the appellees had complied with the act of assembly and that the tag was on a car operated by them or some one for them, for the purpose of demonstrating it to a prospective purchaser, or in taking it to some place for the purpose of sale. The tag was, therefore, *prima facie* evidence that, at the time of the collision, the appellees, or some one acting under their au-

thority, were operating the car, and the burden shifted to them of showing that it was not so operated.''

It does not appear that as a matter of law appellants rebutted the *prima facie* presumption of ownership and that the automobile was being operated by the Minidoka County Motor Company or someone acting under its authority, arising from the admitted fact that the automobile bore the dealer's license plates of the Minidoka County Motor Company. With relations to ownership appellants in their brief state:

"The respondents depend wholly and solely upon this one fact to establish that at the time of this accident the appellant Mast was the servant, employee or agent of the appellant, Minidoka County Motor Company, and was acting within the scope of his employment. The undisputed and uncontradicted evidence in this case established that although the motor vehicle bore the dealer's license plates of the appellant, Minidoka County Motor Company, it was, in fact, owned by the appellant, Thomas Mast. This car was purchased by the appellant Mast on the 13th day of August, 1936, and was owned by him until November 12, 1936, at which time he sold the car to Doctor Jensen. The original conditional sales contract covering the purchase of this motor vehicle, executed by the appellant Mast in favor of appellant, Minidoka County Motor Company and in turn indorsed by it to the Pacific Finance Corporation, was introduced in evidence as defendants' Exhibit 'I,' and the conditional sales contract covering the sale of this motor vehicle to Dr. Earl C. Jensen was introduced in evidence as defendants' Exhibit '3.' At the time of the sale of the motor vehicle to Dr. Jensen, Mr. Mast was allowed credit for the sale price on another motor vehicle purchased by him from the Minidoka County Motor Company. The testimony likewise discloses that Dr. Jensen at a later time traded this same vehicle back to the Minidoka County Motor Company on a new motor vehicle. In the face of this undisputed and uncontradicted evidence, any presumption arising from the car carrying dealer's license plates or *prima facie* case based upon such presumption would not be available to respondents, and would be entirely destroyed.''

The evidence referred to above also discloses certain additional facts not mentioned in appellants' brief. The conditional sales contract, appellants' Exhibit "I" referred to in appellants' statement, above quoted, was executed by appellant Mast as purchaser and Minidoka County Motor Company, as seller and the assignment to the Pacific Finance Corporation, referred to, is dated October 29, 1936, four days after the date of the accident. It also bears on its face the notation "Sold to E. C. Jensen, 11–12–36." Respondents' Exhibit "3," another conditional sales contract, covering the same automobile, being the contract referred to in the quoted portion of appellants' brief, was executed on November 12, 1936, by Earl C. Jensen as purchaser and Minidoka County Motor Company, by M. A. Burson, President, as seller. It therefore appears that the written record discloses that the automobile in question was not sold by Mast to Jensen but was sold by Minidoka County Motor Company, by M. A. Burson, President, to Jensen. From the testimony of M. A. Burson, manager and president of the Minidoka County Motor Company, it appears that during the time the automobile was driven by Mr. Mast it carried the Minidoka County Motor Company's dealer's license plates, which fact was known to Mr. Burson. It thus appears that from August 13, 1936, the date on which Mast claims to have purchased the car in question, until November 12, 1936, when the car was sold to Jensen it carried dealer's license plates of the Minidoka County Motor Company. From all that appears the automobile was never registered in the name of Mast and he was at no time given a certificate of title and he at no time purchased license plates as required by law for the operation of a motor vehicle. When these facts are all considered it cannot be said as a matter of law that appellant Mast was the owner of the automobile. The sale of the automobile to Mast, or ownership in Mast, as contended for by appellants was materially contradicted, making the question of ownership a question of fact for the jury.

"It is equally well settled that, where the evidence offered to establish facts that would rebut this presumption is contradictory, the question is one for the jury; but, where the facts so offered are undisputed and uncontradicted, it becomes properly a question for the court. It might be added that

where the facts are such as to leave the court in doubt as to this question, the proper course is to submit the case to the jury, it being their function to pass upon the weight of the evidence.''

*Willi v. Schaefer Hitchcock Co.,* 53 Ida. 367, 25 Pac. (2d) 167, quoting with approval *International Co. v. Clark,* 147 Md. 34, 127 Atl. 647, this case is quoted with approval in *Manion v. Waybright,* 59 Ida. 643, 86 Pac. (2d) 181. See, also, *Engstrom v. Auburn Automobile Sales Corp.,* 11 Cal. (2d) 64, 77 Pac. (2d) 1059.

 The practically universal principle of law, that the fact of ownership alone, regardless of the presence or absence of the owner in the car at the time of the accident, establishes a *prima facie* case against the owner for the reason that the presumption arises that the driver is the agent of the owner, has been approved and reaffirmed by this court in several cases. (*Willi v. Schaefer Hitchcock Co., supra; Magee v. Hargrove Motor Co.,* 50 Ida. 442, 296 Pac. 774; *Gorton v. Doty,* 57 Ida. 792, 69 Pac. (2d) 136; *Manion v. Waybright,* 59 Ida. 643, 86 Pac. (2d) 181.) It follows from what has been said that no error appears in the submission of these questions to the jury.

 The refusal to give certain of appellants' requested instructions, while urged as error, need not be considered inasmuch as such assignments are not argued and no authorities have been cited and it further appears that the points involved are for the main part considered under other assignments of error.

 Instruction No. 6 urged to be erroneous defines negligence and continues as follows:

''Negligence may also consist in the violation of a statute, such as the law of the road, governing one's conduct at certain times or places, unless such statute makes the violation merely *prima facie* negligence, in which latter case, the violation of the statute has only the consequence attached to it by statute.''

The language of instruction number 6 was approved in *McCoy v. Krengel,* 52 Ida. 626, 17 Pac. (2d) 547. Appellants urge that this instruction and instruction No. 20 when considered with each other are erroneous for the reason that the jury could have found that the instructions permit of

the interpretation that a failure to register a motor vehicle amounts to negligence from which the jury could have further found against appellants, independent of other negligence. Instruction No. 20 gave to the jury the provisions of section 48–1403, I. C. A., making it the duty of the owner of a motor vehicle to make application for and be granted an official certificate of title, was proper to be considered in connection with appellants' contention that Mast was the owner of the automobile, the evidence failing to show he had made application for a certificate of title or had procured license for the automobile. Appellants' interpretation does not appear warranted inasmuch as the statute set forth in instruction No. 20, does not appear to be a "violation of a statute, such as a law of the road, governing one's conduct at certain times or places" referred to or contemplated in instruction No. 6, as constituting negligence.

Appellants complain of instruction No. 26, to the effect that bicycle riders have the same right as automobile drivers to the use of the public highways, and instructions No. 28 and 29 to the effect that the term guest as used in these instructions imports that June Maier was the recipient of Richard Maier's hospitality, and in further instructing the jury that if they found "that June Maier was enjoying the hospitality of Richard Maier, and was riding on the bicycle for her own pleasure, or on her own business, without making any return therefor and conferring no benefit on Richard Maier, other than the mere pleasure of her company, she was a guest." It is conceded in effect that these instructions are correct statements of law with reference to the operation of a motor vehicle, but appellants insist that they do not apply and do not state the law when two people are riding a bicycle, it being appellants' theory that a person riding a bicycle cannot be a guest. We think the rule correctly stated in the cases hereinafter cited that when two persons ride upon a bicycle the person not operating the machine may be a guest of the operator, and that if such person be a guest, negligence of the operator will not be imputed to the guest. The evidence would seem to support the view that June Maier was riding with Richard Maier for her own pleasure and that any negligence on the part

of Richard Maier, if any there was, was not attributable to June Maier. (*Nagel v. McDermott,* 138 Wash. 536, 244 Pac. 977; *Diller v. Riverview Dairy,* 133 Or. 442, 288 Pac. 401; *Pope v. Halpern,* 193 Cal. 168, 223 Pac. 470, 473; *Thompson v. Fitzgerald,* 205 Cal. 563, 271 Pac. 1072, 1073; *Sanders v. Taber,* 79 Or. 522, 155 Pac. 1194; *Hunt v. Los Angeles, Ry. Corp.,* 110 Cal. App. 456, 294 Pac. 745; *Wong Kit v. Crescent Creamery Co.,* 87 Cal. App. 563, 262 Pac. 481.)

▮ There is no merit in appellants' assignment of error that the giving of instruction No. 30 was error. Under the facts of this case it cannot be seriously contended that the lack of a light on the front of the bicycle had any causal connection with the accident or was a contributing factor. This instruction finds full support in *Tendoy v. West, supra.*

▮ Appellants' assign as error the giving of instruction No. 31, urging that said instruction in effect places a higher burden upon a motorist than is contemplated by law and constituted an unwarranted comment by the court on the evidence. This instruction is taken almost *verbatim* from 12 Blashfield's Cyclopedia of Automobile Law and Practice, page 184, section 7934, approved in *Carlson v. Johnke,* 57 S. D. 544, 234 N. W. 25, 72 A. L. R. 1352, and see, also, *Ruth v. Vroom,* 245 Mich. 88, 222 N. W. 155, 156, 62 A. L. R. 1528. When this instruction is read in the light of all the evidence and considered together with instructions number 32 and 33 it is not susceptible to the interpretation placed upon it by appellants, namely: That it "in effect, placed a higher burden upon a motorist than is contemplated by law, and constituted an unwarranted comment by the court on the evidence." One driving in the nighttime must drive at such a rate of speed that he may be able ordinarily to stop short of an object appearing within the radius of his lights and he must see an object that an ordinarily prudent driver under like circumstances would have seen. A motorist completely blinded by the lights of an approaching automobile cannot see an object within the radius of his lights and must not proceed until he can see. We are of the opinion that the giving of the instructions complained of was not under the facts of this case prejudicially erroneous.

From what has been said it follows that the judgment must be affirmed and it is so ordered. Costs awarded to respondents.

Givens and Morgan, JJ., concur.

Ailshie, C. J., concurs in the conclusion reached.

Holden, J., did not sit at the hearing and took no part in the decision.